UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

SHIMSHON WEXLER                                    Civil Action No. 1:22-cv-01348-PAE
on behalf of himself and all others similarly
situated
                          Plaintiff,
        v.


LVNV FUNDING, LLC; and
RESURGENT CAPITAL SERVICES LP;

                          Defendants.
-------------------------------------------------------X


## PLAINTIFF'S RESPONDING BRIEF OPPOSING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS


Law Offices of Gus Michael Farinella, PC
110 Jericho Turnpike – Suite 100
Floral Park, NY 11001
*Attorney for Plaintiffs*

*On the brief:*
Ryan Gentile, Esq.

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES…………………………………………………………...……5

INTRODUCTION………………………………………………………………………10

FACTUAL BACKGROUND……………………………………………………………11

LEGAL ARGUMENTS…………………………………………………………………12

      POINT I:      LEGAL STANDARD FOR A MOTION TO COMPEL
                        ARBITRATION……………………………………………………12

      POINT II:     DEFENDANTS MOTION MUST BE DENIED BECAUSE THE CARD
                        AGREEMENT IS UNAUTHENTICATED AND THEREFORE
                        INADMISSIBLE EVIDENCE……………………………………15

                        A.  Introduction……………………………………………………15

                        B.  Unauthenticated Documents Cannot Be Considered When
                              Deciding A Motion…………………………………………15

                        C.  Defendant's Efforts To Lay A Proper Foundation To Admit The
                              Card Agreement As Evidence……………………………………16

                        D.  Defendants Have Not Satisfied Any Of The Federal Rules of
                              Evidence To Admit The Card Agreement Into Evidence…………17

                              1.    Defendants Have Not Properly Authenticated The Card
                                     Agreement Under Fed. R. Evid. § 901…………………………17

                              2.    Defendants Have Not Established The Card Agreement Is
                                          Admissible As Non-hearsay Evidence Under One Or More
                                        Of The Exceptions To The Hearsay Rule……………………19

                        E.  Conclusion……………………………………………………21

      POINT III:    DEFENDANTS HAVE SUBMITTED NO EVIDENCE THAT LVNV
                        WAS ASSIGNED THE DEBT AND ALL LEGAL RIGHTS IN THE
                        CARD AGREEMENT……………………………………………21

      POINT IV:    DEFENDANTS ARE NOT "CONNECTED WITH" CITIBANK AND
                        EVEN IF THEY WERE THEY COULD STILL NOT COMPEL
                          ARBITRATION…………………………………………………..22

                          A.  Introduction…………………………………………………22

      B. Defendants Are Not Connected With Citibank…………………22

         1. LVNV Has Not Proven They Are The Subsequent Owner
           Of The Debt…………………………………………………22

         2. Resurgent Is Not "Connected With" Citibank………………23

         3. Conclusion……………………………………………..24

      C. The Plain Language Of The Card Agreement Does Not Permit
        Defendants To Demand Arbitration……………………………24

         1. Introduction…………………………………………………25

         2. The Terms And Definitions Of The Card Agreement And
           Arbitration Clause………………………………………………25

         3. Resurgent May Not Compel Arbitration Under The Plain
           Terms Of The Card Agreement……………………………..26

         4. Case Law Holds That Resurgent May Not Compel
           Arbitration……………………………………………………27

         5. LVNV May Not Compel Arbitration Because They Have Not
           Shown They Were Assigned The Debt And The Arbitration
           Rights In The Card Agreement………………………………29

         6. Conclusion……………………………………………..30

POINT V:    DEFENDANTS MAY NOT COMPEL ARBITRATION AS THIRD-
            PARTY BENEFICIARIES……………………………………………31

      A. Introduction…………………………………………………31

      B. South Dakota Law…………………………………………31

      C. Defendants Are Not Third-Party Beneficiaries Of The Card
        Agreement……………………………………………………32

         1. LVNV Has Provided No Evidence They Were Assigned The
           Debt And The Right Enforce The Arbitration Clause……….32

         2. The Card Agreement Was Not Entered Into To Expressly
           Benefit Defendants……………………………………………..33

3.  Case Law Demonstrates Defendants Are Not Third-Party Beneficiaries……………………………………………………34

4.  Conclusion……………………………………………………..35

POINT VI:    DEFENDANTS MAY NOT COMPEL ARBITRATION UNDER EQUITABLE ESTOPPEL…………………………………………36

A.  Introduction…………………………………………………36

B.  Equitable Estoppel Law…………………………………………..36

C.  Defendants Cannot Compel Arbitration Under An Equitable Estoppel Theory…………………………………………………………38

D.  Case Law Holds That Defendants Cannot Compel Arbitration Under An Equitable Estoppel Theory………………………………………38

E.  Conclusion…………………………………………………..41

POINT VII:   DEFENDANT'S REMAINING ARGUMENTS ARE INAPPLICABLE…………………………………………………..41

POINT VIII:  ANY ARGUMENTS MADE OR DOCUMENTS SUBMITTED BY DEFENDANTS FOR THE FIRST TIME IN ANY REPLY BRIEF MUST NOT BE CONSIDERED………………………………………42

CONCLUSION…………………………………………………………………42

**TABLE OF AUTHORITIES**

**CASES**

Arthur Andersen LLP v. Carlisle,
556 U.S. 624 (2009)……………………………………………………...13, 14, 36

AT&T Mobility LLC v. Concepcion,
563 U.S. 333 (2011)…………………………………………………………...13

Bensadoun v. Jobe-Riat,
316 F.3d 171 (2d Cir. 2003)……………………………………………13, 14

Butto v. Collecto Inc.,
802 F. Supp. 2d 443 (E.D.N.Y. 2011)……………………………………14, 15

Canada v. Blain's Helicopter, Inc.,
831 F.2d 920 (9th Cir. 1987)……………………………………………16

Carvant Fin. LLC v. Autoguard Advantage Corp.,
958 F. Supp. 2d 390 (E.D.N.Y. 2013)…………………………………..14

Cavlovic v. J. C. Penney Corp.,
884 F.3d 1051 (10th Cir. 2018)……………………………………28, 29

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2002)…………………………………………..14

Conn. Bar Ass'n v. United States,
620 F.3d 81 (2d Cir. 2010)……………………………………………42

Cooper v. Ruane Cunniff & Goldfarb Inc.,
990 F.3d 173 (2d Cir. 2021)…………………………………………13, 28

Doe v Trump Corp.,
453 F. Supp. 3d 634 (S.D.N.Y. 2020)……………………………………...37

Fox v. Nationwide Credit, Inc.,
2010 WL 3420172 (N.D. Ill. Aug. 25, 2010)…………………………………40

Fedotov v. Peter T. Roach & Assocs., P.C.,
2006 WL 692002 (S.D.N.Y. Mar. 16, 2006)…………………………………41

Ferro v. Allied Interstate, LLC,
2019 WL 3021234 (E.D.N.Y. July 10, 2019)…………………………14, 38, 39

Garcia v. Midland Funding, LLC,
   WL 1807563 (D.N.J. May 5, 2017)………………………………………………30, 32

Holick v. Cellular Sales of N.Y., LLC,
   802 F.3d 391 (2d Cir. 2015)…………………………………………………………..13

Howsam v. Dean Witter Reynolds, Inc.,
   537 U.S. 79 (2002)………………………………………………………………………13

In re Am. Express Fin. Advisors Sec. Litig.,
   672 F.3d 113 (2d Cir. 2011)…………………………………………………...……13

Jennings v. Rapid City Reg'l Hosp., Inc.,
   802 N.W.2d 918 (S.D. 2011)……………………………………………………31, 33, 34

JLM Indus., Inc. v. Stolt-Nielsen SA,
   387 F.3d 163 (2d Cir. 2004)…………………………………………………………..13

Lawson v. Life of the South Insurance Company,
   648 F.3d 1166 (11th Cir. 2011)……………………………………………………29

Lenox MacLaren Surgical Corp. v. Medtronic, Inc.,
   449 F. App'x 704, 708 (10th Cir. 2011)…………………………………………..37, 39

Lester v. Portfolio Recovery Assocs., LLC,,
   2018 WL 3374107 (N.D. Ala. July 11, 2018)……………………………………30, 32

Lucy v. Bay Area Credit Svc LLC,
   792 F. Supp. 2d 320 (D. Conn. 2011)……………………………………………28

Madorskaya v. Frontline Asset Strategies, LLC,
   2021 WL 3884177 (E.D.N.Y. Aug. 31, 2021)………………………24, 27, 28, 34, 35, 36

Marcial v. Springleaf Financial Services, Inc.,
   2014 WL 6453781 (D. Oregon Nov. 17, 2014)……………………………………28

Masad v. Weber,
   772 N.W.2d 144 (S.D. 2009)……………………………………………………..31, 34

McGinnis v. John C. Bonewicz, P.C.,
   2012 WL 604430 (C.D. Ill. Feb. 2, 2012) *report and recommendation adopted,*
   2012 WL 604427 (C.D. Ill. Feb. 24, 2012)………………………………………..24, 28

Meridian Autonomous Inc. v. Coast Autonomous LLC,
   2020 WL 496078 (S.D.N.Y. Jan. 30, 2020)……………………………………37

Mims v. Global Credit and Collection Corporation,
    803 F. Supp. 2d 1349, (S.D. Fla. 2011)……………………………………………40

Nicosia v. Amazon.com, Inc.,
    834 F.3d 220 (2d Cir. 2016)…………………………………………………..13, 14, 15

Norton v. Sam's Club,
    145 F.3d 114 (2d Cir. 1998)……………………………………………………..42

Orlob-Radford v. Midland Funding, LLC, et al,
    2016 WL 5859002 (E.D. Wash. 2016)………………………………………………..20

Orn v. Alltran Fin., L.P.,
    779 F. App'x 996 (3d Cir. 2019)……………………………………………………34

Orr v. Bank of Am., NT & SA,
    285 F.3d 764 (9th Cir. 2002)……………………………………………………18

Pacanowski v. Alltran Financial, LP,
    271 F. Supp. 738 (M.D. Penn. 2017)………………………………………………28

Pettaway v. Nat'l Recovery Sols., LLC,
    955 F.3d 299 (2d Cir. 2020)……………………………………………………42

Ragone v. Atl. Video at Manhattan Ctr.,
    595 F.3d 115 (2d Cir. 2010)……………………………………………………37

Rent-A-Center, West, Inc. v. Jackson,
    561 U.S. 63 (2010)……………………………………………………………13

Richardson v. Correctional Medical Care, Inc.,
    2021 WL 6775905 (N.D.N.Y. Jan. 14, 2021)………………………………………..16

Rodriguez-Ocasio v. Midland Credit Management, Inc.,
    2021 WL 3758077 (D.N.J. Aug. 25, 2021)………………………………………30, 33

Saroza v. Client Servs., Inc.
    2020 WL 948793 (D.N.J. Feb. 27, 2020)………………………………………..28

Schnabel v. Trilegiant Corp.,
    697 F.3d 110 (2d Cir. 2012)……………………………………………………13, 14

Shetiwy v. Midland Credit Mgmt.,
    959 F. Supp. 2d 469 (S.D.N.Y. 2013)………………………………………………...15

Silman v. Utica Coll.,
    2016 WL 4275721 (N.D.N.Y. Aug. 12, 2016)……………………………………..16

Sisney v. Reisch,
    754 N.W.2d 813, 818 (S.D. 2008)…………………………………………………31

Sisney v. State,
    754 N.W.2d 639 (S.D. 2008)……………………………………………..…..31, 34

Sokol Holdings, Inc. v. BMB Munai, Inc.,
    542 F.3d 354 (2d Cir. 2008)………………………………………………..…37

United States v. Pluta,
    176 F.3d 43 (2d Cir.1999)…………………………………………..……18

United States v. Tin Yat Chin,
    371 F.3d 31 (2d Cir.2004)…..……………………………………………17

United States. v. Vayner,
    769 F.3d 125 (2d Cir. 2014)………………………………………...…18

Untershine v. Advanced Call Center Technologies, LLC,
    2018 WL 3025074 (E.D. Wisc. 2018)………………………………...…40

Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.
    661 F.3d 164 (2d Cir. 2011)……………………………………………14, 15

White v. Sunoco, Inc.,
    870 F.3d 257 (3d Cir. 2017)………………………………………………..28

White v. Sunoco Inc.,
    189 F. Supp. 3d 486 (E.D. Pa. 2016) *aff'd on other grounds*,
    870 F.3d 257, (3d Cir. 2017)………………………………………………..34

Wojcik v. Midland Credit Management, Inc.,
    2019 WL 342356 (E.D.N.Y. 2019)……………………………………………39

## STATUTES

9 U.S.C. § 2……………………………………………………………………………10

15 U.S.C. §1692, *et seq*……………………………………………………………..12

S.D. Codified Laws § 53-2-6……………………………………………………31

## <u>RULES</u>

Fed. R. Evid. § 803(6)……………………………………………………………....15, 19, 20

Fed. R. Evid. § 803(6)(A)-(D)………………………………………………………………..20

Fed. R. Evid. § 901………………………………………………………………..15, 18, 19, 21

Fed. R. Evid. § 901(a)………………………………………………………………..17, 18, 19, 21

Fed. R. Evid. § 901(b)(1)………………………………………………………………18, 19, 21

## INTRODUCTION

Plaintiff, Shimshon Wexler, ("Plaintiff") hereby responds in opposition to Defendants LVNV Funding, LLC ("LVNV") and Resurgent Capital Services, LP's ("Resurgent") (collectively the "Defendants"), Motion to Compel Arbitration and to Dismiss [Doc. No. 15] ("Motion"). Plaintiff sued Defendants on his own behalf and on behalf of a proposed class of similarly situated persons for redress from Defendants violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq*. Defendants now asks this Court to strip Plaintiff of both his right to litigate in his chosen forum and his right to seek relief on behalf of a class of persons pursuant to Fed. R. Civ. P. 23. The arbitration agreement Defendants seek to enforce is found in what they claim to be a credit card agreement between Plaintiff and Citibank, N.A. (the "Card Agreement") [see Doc. No. 15-3].

As demonstrated in detail *infra*, Defendants' Motion must be denied for several reasons. First, the Card Agreement Defendants attached to their Motion [Doc. No. 15-3] containing the arbitration clause they seek to enforce is unauthenticated. Therefore, the Card Agreement is inadmissible evidence which cannot be considered by this Court when deciding the Motion. This alone mandates that Defendants' Motion be denied. Second, Defendants have produced no evidence that the debt Plaintiff allegedly owed to Citibank was ever assigned or otherwise sold to LVNV. Nor have Defendants produced any evidence that Citibank's rights in the Card agreement, including the right to compel arbitration, were ever assigned to LVNV. Finally, Defendants' arguments that they are "connected with" Citibank, can compel arbitration as third-party beneficiaries of the arbitration clause in the Card Agreement, and that Plaintiff is equitable estopped from denying arbitration are all meritless and should be rejected by this Court.

## FACTUAL BACKGROUND

The following facts are drawn from the Complaint and must be accepted as true for the purposes of deciding the Motion. Sometime prior November 1, 2019, Plaintiff **allegedly** incurred a debt to Citibank, N.A. ("Citibank") related to a personal credit card account with an account number ending in 4826 (the "Debt"). (**Emphasis Added**) (Cmplt., ¶ 27). Defendants allege that LVNV purchased the Debt. (Cmplt., ¶ 31).

Plaintiff does not concede or agree that he owed the Debt to LVNV or that the Debt was purchased by LVNV from Citibank or any other entity. Plaintiff only alleges that Defendants *claim* that LVNV purchased the Debt after it went into default and that Defendants alleged that Plaintiff once owed the Debt to LVNV. (Emphasis in original). (Cmplt., ¶ 32). **Plaintiff disputes ever owing the Debt to LVNV**. (Cmplt., ¶ 33) (Emphasis Added). Plaintiff denies that arbitration rights, if any, were assigned to Defendants from any entity. (Cmplt., ¶ 34).

Resurgent was never transferred, sold, or assigned any interest or rights with regard to the Debt. (Cmplt., ¶ 35). Resurgent is not the owner of the Debt or the Plaintiff's creditor, but rather is merely a third-party debt collector with no legal interest or right in the Debt. (Cmplt., ¶ 36).

On February 15, 2021, the Plaintiff visited Resurgent's website. (Cmplt., ¶ 38). Resurgent's website showed he allegedly owed a balance of $4,409.88 on the Debt. (Cmplt., ¶ 39). Resurgent's website gave the Plaintiff the option to make a one-time payment of $1,322.96 to settle the debt in full thus saving him $3,086.92. (Cmplt., ¶¶ 40-41). The Plaintiff, **despite disputing he owed the Debt to LVNV**, made this one-time settlement payment of $1,322.96 on February 15, 2021. (**Emphasis Added**) (Cmplt., ¶ 42). Resurgent acknowledged in a letter dated February 20, 2021 that they received the settlement payment of $1,322.96 on February 15, 2021. (Cmplt., ¶ 43).

Despite receiving the Plaintiff's payment of $1,322.96 on February 15, 2021, which payment settled the Debt in full, Defendants continued to attempt to collect the Debt from Plaintiff. (Cmplt., ¶ 44). On February 18, 2021, Defendants sent Plaintiff two letters stating that he owed a balance of $3,086.92 in an attempt to collect the debt rather than crediting him with making a $1,322.96 one-time payment in full satisfaction of the debt. (Cmplt., ¶¶ 45-49.) (*See* **Exhibits A & B** to Complaint). On March 16, 2021, Resurgent sent him an e-mail indicating that he missed his last payment in an effort to collect the debt, despite his previously settling the debt. (Cmplt., ¶¶ 56-60.)

Around March 3, 2021, Defendants updated Plaintiff's credit report to indicate that his balance on the debt was $3,086.92 instead of reporting the Debt as a $0 balance and settled in full thus falsely reporting Plaintiff as still owing $3,086.92 on the Debt. (Cmplt., at ¶¶ 68, 70.) Plaintiff then had to write a letter to Equifax, Experian and Trans Union and dispute that he owed $3,086 but rather had settled the Debt in full and owed $0. (Cmplt., ¶ 71.)

In the one-count Complaint, Plaintiff claims that Defendants violated Sections 1692d, e, and g of the FDCPA by indicating in correspondence and his credit reports that he owed $3,086.92 on the Debt after he made the one-time settlement payment. (Cmplt., ¶¶ 78-81)

## LEGAL ARGUMENTS

## POINT I

## LEGAL STANDARD FOR A MOTION TO COMPEL ARBITRATION

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement in "a contract evidencing a transaction involving commerce…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This statutory provision reflects a "national policy favoring

arbitration." <u>Nicosia v. Amazon.com, Inc</u>., 834 F.3d 220, 228-29 (2d Cir. 2016) (quoting <u>AT&T</u>

<u>Mobility LLC v. Concepcion</u>, 563 U.S. 333, 346 (2011)). At the same time, the FAA embodies

"the 'fundamental principle that arbitration is a matter of contract.'" <u>Concepcion</u>, 563 U.S. at

339 (quoting <u>Rent-A-Center, West, Inc. v. Jackson</u>, 561 U.S. 63, 67 (2010)). Accordingly, "the

FAA 'does not require parties to arbitrate when they have not agreed to do so.'" <u>Nicosia</u>, 834

F.3d at 229 (quoting <u>Schnabel v. Trilegiant Corp</u>., 697 F.3d 110, 118 (2d Cir. 2012)); *see* <u>also In</u>

<u>re Am. Express Fin. Advisors Sec. Litig</u>., 672 F.3d 113, 127 (2d Cir. 2011) ("Despite the 'liberal

federal policy favoring arbitration agreements,' 'arbitration is a matter of contract and a party

cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"

(internal citations omitted)).

 "The question whether the parties have submitted a particular dispute to

arbitration, *i.e.*, the question of arbitrability, is an issue for judicial determination unless the

parties clearly and unmistakably provide otherwise." <u>Howsam v. Dean Witter Reynolds,</u>

<u>Inc.</u>, 537 U.S. 79, 83 (2002) (alteration, internal quotation marks, and citations omitted);

*accord* <u>Bensadoun v. Jobe-Riat</u>, 316 F.3d 171, 175 (2d Cir. 2003). "Courts consider two factors

when deciding if a dispute is arbitrable: '(1) whether the parties agreed to arbitrate, and, if so, (2)

whether the scope of that agreement encompasses the claims at issue.'" <u>Cooper v. Ruane Cunniff</u>

<u>& Goldfarb Inc</u>., 990 F.3d 173, 179 (2d Cir. 2021) (quoting <u>Holick v. Cellular Sales of N.Y.,</u>

<u>LLC</u>, 802 F.3d 391, 394 (2d Cir. 2015)). If federal statutory claims are asserted, courts also

consider "whether Congress intended those claims to be nonarbitrable." *See* <u>JLM Indus., Inc. v.</u>

<u>Stolt-Nielsen SA</u>, 387 F.3d 163, 169 (2d Cir. 2004). Under the FAA, the interpretation of an

arbitration agreement is a matter of state law. *See* <u>Arthur Andersen LLP v. Carlisle</u>, 556 U.S.

624, 630-31 (2009); *see also* <u>Nicosia</u>, 834 F.3d at 231 ("State law principles of contract formation govern the arbitrability question." (citation omitted)).

In evaluating a motion to compel arbitration, "**courts apply a 'standard similar to that applicable for a motion for summary judgment**.'" <u>Nicosia,</u> 834 F.3d at 229 (*quoting* Bensadoun, 316 F.3d 175). Therefore, courts "consider all relevant, **admissible evidence** submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with…affidavits," <u>Id</u>. (**Emphasis Added**) (*quoting* <u>Chambers v. Time Warner, Inc</u>., 282 F.3d 147, 155 (2d Cir. 2002)), and "must draw all reasonable inferences in favor of the non-moving party," <u>Id</u>. (citing <u>Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd</u>.,661 F.3d 164, 171 (2d Cir. 2011)). "[A] trial is warranted only if there exists one or more genuine issues of material fact" regarding arbitrability. <u>Schnabel</u>, 697 F.3d at 118; *accord* <u>Nicosia</u>, 834 F.3d at 229. If "the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law," the court "may rule on the basis of that legal issue and avoid the need for further court proceedings." <u>Nicosia</u>, 834 F.3d at 229 (internal quotation marks and citation omitted).

The moving party "has the initial burden of showing that an agreement to arbitrate exists." <u>Ferro v. Allied Interstate, LLC</u>, 2019 WL 3021234, at *2 (E.D.N.Y. July 10, 2019) (quoting <u>Carvant Fin. LLC v. Autoguard Advantage Corp</u>., 958 F. Supp. 2d 390, 395 (E.D.N.Y. 2013)); *see also* <u>Butto v. Collecto Inc</u>., 802 F. Supp. 2d 443, 446 (E.D.N.Y. 2011) ("[T]he party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." (citation omitted)). Once that initial showing is made, "[t]he party resisting arbitration bears the burden of demonstrating that the arbitration agreement is invalid or does not encompass the claims at issue." <u>Ferro</u>, 2019 WL

3021234, at *2 (alteration in original) (quoting <u>Shetiwy v. Midland Credit Mgmt.</u>, 959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013)).

**POINT II**

**DEFENDANTS MOTION MUST BE DENIED BECAUSE THE CARD AGREEMENT IS UNAUTHENTICATED AND THEREFORE INADMISSIBLE EVIDENCE**

**A. Introduction.**

The Defendants have the burden of proving by a preponderance of the evidence that an agreement to arbitrate exists between Plaintiff and Defendants. <u>Ferraro</u>, 2019 WL 3021234, at *2; <u>Butto</u>, 802 F. Supp. 2d at 446. This Court must draw all reasonable inferences in favor of the Plaintiff when deciding this Motion. <i>See</i> <u>Wachovia Bank, N.A.</u>, 661 F.3d at 171. Defendants have failed to meet their initial burden of showing an agreement to arbitrate exists because the "proof" of an agreement to arbitrate that they have submitted, <i>i.e.</i> the Card Agreement, has not been property authenticated, and is therefore inadmissible.

As shown below, Defendants' Motion completely fails to comply with Fed. R. Evid. §901 and §803(6) in attempting to admit the Card Agreement as evidence of an agreement to arbitrate between Plaintiff and Defendants. Because the Card Agreement that Defendants submitted with their Motion [<i>see</i> Doc. No. 15-3] is not admissible evidence, it cannot be considered by this Court when deciding Defendants Motion. Without the Card Agreement and the arbitration clause contained therein that Defendants seek to enforce being admissible evidence in this matter, Defendant's motion must be denied.

**B. Unauthenticated Documents Cannot Be Considered When Deciding A Motion.**

In evaluating a motion to compel arbitration, "courts apply a 'standard similar to that applicable for a motion for summary judgment.'" <u>Nicosia</u>, 834 F.3d at 229. Therefore, courts "consider all relevant, **admissible evidence** submitted by the parties and contained in pleadings,

depositions, answers to interrogatories, and admissions on file, together with…affidavits," Id. (**Emphasis Added**).

Unauthenticated documents cannot be considered in determining a motion for summary judgment. Richardson v. Correctional Medical Care, Inc., 2021 WL 6775905, *3-4 (N.D.N.Y. Jan. 14, 2021) (citing Silman v. Utica Coll., 2016 WL 4275721, *5 (N.D.N.Y. Aug. 12, 2016)). Each document "must be authenticated by and attached to an [affidavit] that meets the requirements of [Rule] 56(e) and the [affiant] **must be a person through whom the exhibit could be admitted into evidence**." Silman, 2016 WL 4275721 at 5 (quoting Canada v. Blain's Helicopter, Inc., 831 F.2d 920, 925 (9th Cir. 1987))(**Emphasis Added**).

C. **Defendant's Efforts To Lay A Proper Foundation To Admit The Card Agreement As Evidence.**

In their Motion, Defendants attach what they claim to be a Card Agreement between Plaintiff and Citibank containing the arbitration clause they seek to enforce [Doc. No. 15-3]. Plaintiff does not concede or agree that the Card Agreement Defendants submitted with their Motion is the agreement between Plaintiff and Citibank. Defendants entire Motion relies on the Card Agreement and their alleged ability to enforce the arbitration clause contained therein. Without the Card Agreement being properly admitted into evidence, and thus able to be considered by this Court, Defendants' Motion to Compel Arbitration fails as a matter of law.

The Card Agreement is attached as Exhibit A to the Declaration of Peter Siachos, Esq. [Doc. No. 15-2]. **Peter Siachos is the Defendants' attorney.** The Defendants are relying solely on the Declaration of their attorney, Peter Siachos, Esq., to properly authenticate the Card Agreement and admit it as non-hearsay evidence or under one or more of the exceptions to the hearsay rule.

The declaration of Peter Siachos, Esq. only contains three paragraphs, the first is introductory, the second states that the Declaration is being submitted in support of Defendants' Motion, and the third and most relevant paragraph, which apparently seeks to authenticate and introduce the Card Agreement as evidence before this Court, states in conclusory fashion, "Attached hereto as **Exhibit A** is a true and complete copy of the Credit Card Agreement." (Emphasis in original). There are no other declarations or affidavits from any party in Defendants' Motion.

In their attempt to admit the Card Agreement into evidence, Defendants have ignored and bypassed seemingly every Federal Rule of Evidence there is related to the submission of documents as evidence to a Court. As demonstrated below, the Card Agreement has not been authenticated as evidence pursuant to Fed. R. Evid. § 901 and, in addition, it has not been established as non-hearsay evidence under one or more of the exceptions to the hearsay rule.

### D. Defendants Have Not Satisfied Any Of The Federal Rules of Evidence To Admit The Card Agreement Into Evidence.

#### 1. Defendants Have Not Properly Authenticated The Card Agreement Under Fed. R. Evid. § 901.

Before documentary evidence such as the Card Agreement may be considered by a Court, Fed. R. Evid. § 901(a) requires a proper foundation be laid to authenticate the item. Rule 901 of the Federal Rules of Evidence governs the authentication of evidence and provides, in pertinent part, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed.R.Evid. 901(a); United States v. Tin Yat Chin, 371 F.3d 31, 38 (2d Cir.2004). "This requirement is satisfied if sufficient proof has been introduced so that a reasonable [factfinder] could find in favor of authenticity or identification." United States. v.

Vayner, 769 F.3d 125, 130 (2d Cir. 2014)(quoting United States v. Pluta, 176 F.3d 43,49 (2d Cir.1999)) (internal quotation marks omitted). "**The requirement of authentication is…a condition precedent to admitting evidence**." Vayner, 769 F.3d at 129 (**Emphasis Added**) *see also* Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) ("[U]nauthenticated documents cannot be considered in a motion for summary judgment"). Such a foundation may be laid by testimony of a witness who has personal knowledge. Fed. R. Evid. § 901(b)(1).

Defendants have submitted no declaration or affidavit from any person who purports to be an employee of Citibank or be the custodian of records for Citibank to authenticate the Card Agreement. Defendants have submitted no declaration or affidavit from any person employed by Citibank who claims to have personal knowledge of their business practices with respect to credit card accounts, who has access to the business records that related to the credit card accounts issued by Citibank, including, in particular, the records of cardmember agreements, and who can attest that the Card Agreement the Defendants submitted to their Motion is the actual card agreement that governs Plaintiff's account with Citibank. In short, Defendants have submitted no declaration or affidavit from anyone who claims to be a "witness with personal knowledge…that the Card Agreement is what it is claimed to be." *See* Fed. R. Evid. §901(b)(1).

Furthermore, the Declaration of Defendants' Counsel, Peter Siachos Esq., does not allege that in addition to being the attorney for Defendants, that he also works for Citibank, is the custodian of records for Citibank, or that he is in anyway a "witness with knowledge that the Card Agreement is what it is claimed to be." Therefore, the Declaration of Peter Siachos, Esq. is wholly insufficient to authenticate the Card Agreement under Fed. R. Evid § 901(a).

In conclusion, Defendants have not even come close to meeting their burden under Fed. R. Evid. § 901 to authenticate the Card Agreement. A mere conclusory statement in a declaration

**from the attorney for a party to an action** that a document is *what the attorney claims it to be* does not lay a proper foundation to authenticate a document pursuant to Fed. R. Evid. § 901(a). This is especially true when that attorney does not even claim to be a "witness with knowledge" under Fed. R. Evid. § 901(b)(1). Therefore, it is respectfully submitted that the Card Agreement has not been properly authenticated and therefore is not admissible evidence. Because the Card Agreement contains the arbitration clause the Defendants seek to enforce, Defendants' Motion to Compel Arbitration must be denied.

      **2.   Defendants Have Not Established The Card Agreement Is Admissible As Non-hearsay Evidence Under One Or More Of The Exceptions To The Hearsay Rule.**

In addition to authenticating the document a party seeks to introduce as evidence pursuant to Fed. R. Evid. § 901, the contents of the document must be admissible as non-hearsay evidence or under one or more of the exceptions to the hearsay rule. Here, Defendants do not even attempt to invoke any Federal Rule of Evidence to admit the Card Agreement as non-hearsay evidence under one or more of the exceptions to the hearsay rule. If Defendants were attempting to invoke Federal Rule of Evidence § 803(6), the business records exception to the hearsay rule, then their Motion wholly fails to do so. According to Federal Rule of Evidence § 803(6) — the business records exception to hearsay — a business record is admissible if:

1. the record was made at or near the time by—or from information transmitted by—someone with knowledge;
2. the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
3. making the record was a regular practice of that activity;
4. all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. § 803(6).

Courts have declined to admit records where declarants offer no more than conclusory statements that repeat the language of Rule 803(6). *See, e.g.,* <u>Orlob-Radford v. Midland Funding, LLC, et al</u>, 2016 WL 5859002, at *5 (E.D. Wash. 2016) (refusing to accept declarant's "conclusory statements as foundation to establish the Cardholder Agreement as a business record" where declarant "parroted the foundational language of Fed. R. Evid. 803(6), but provided no basis to show how he knew those records were created in the ordinary course of business"). In this matter, Defendants have not even offered a declaration or affidavit from any party that even parrots the language of Rule 803(6), instead they offered no affidavit at all. Defendants provided this Court with no affidavit or declaration from a "custodian or another qualified witness" that the Card Agreement "(A) was made at or near the time by – or from information transmitted by – someone with knowledge; (B) the Card Agreement was kept in the course of a regularly conducted activity of a business…; and (C) making the record was a regular practice of that activity." *See* Fed. R. Evid. § 803(6)(A)-(D).

The only thing the Defendants have submitted to admit the Card Agreement as evidence is a one sentence declaration **from their attorney** that reads, "Attached hereto as Exhibit A is a true and complete copy of the Credit Card Agreement." This mere conclusory statement from the attorney for the Defendants does not even come close to meeting any of the requirements of Fed. R. Evid. § 803(6). As such, the Card Agreement is not admissible evidence under any exemption to the hearsay rule, must not be considered as evidence by this Court, and Defendants Motion must be denied.

### E. Conclusion.

Defendants attempt to introduce the Card Agreement as evidence in their Motion is wholly insufficient under the Federal Rules of Evidence. An attorney for a party cannot simply authenticate and admit a business document into evidence under a non-hearsay rule by stating in a conclusory fashion in a declaration that the document is true and authentic. If attorneys could do this then trials, and the evidence admitted therein, would be quite interesting.

In conclusion, Defendants have undertaken no effort nor submitted any evidence to (1) authenticate the Card Agreement pursuant to Fed. R. Evid. § 901 and (2) admit the Card Agreement as an exemption to hearsay under Fed. R. Evid. § 803(6) or any other rule. Therefore, Defendants Motion to Compel must be denied because the Card Agreement and the arbitration clause contained therein that Defendant's argue they can enforce is unauthenticated and inadmissible evidence that cannot be considered by this Court when deciding the Motion.

### POINT III

### DEFENDANTS HAVE SUBMITTED NO EVIDENCE THAT LVNV WAS ASSIGNED THE DEBT AND ALL LEGAL RIGHTS IN THE CARD AGREEMENT

Throughout their Motion, LVNV continuously states that they are an assignee of Citibank and now own the Debt Plaintiff allegedly originally owed to Citibank. The problem with Defendants' argument is two-fold. First, Plaintiff never pleaded in the Complaint that LVNV was an assignee of Citibank, nor did Plaintiff plead that he owes the Debt to LVNV. Plaintiff only pleaded that LVNV *alleged* they were assignees of Citibank, but Plaintiff specifically denies this in the complaint, denies that he ever owed the Debt to LVNV, and denies that LVNV was every assigned any rights to arbitration. (Cmplt., ¶¶ 31- 34). Therefore, there is no admission from Plaintiff that LVNV owns the Debt, is an assignee of Citibank, or that Citibank assigned the right to compel arbitration to LVNV.

More importantly though, Defendants have submitted no proof in the form of a bill of sale, assignment agreement, or any other agreement that evidences that LVNV was ever assigned the Debt. LVNV has also failed to submit any agreement that evidences that LVNV was assigned any of Citibank's legal rights in the Card Agreement, including the right to compel arbitration. In motions to compel arbitration in FDCPA cases, an alleged assignee routinely files a bill of sale or other proof that they are an assignee of the original creditor with their motion. Here, LVNV has submitted no such proof or evidence, which is telling.

Simply put, there is no evidence before this Court on the Motion that demonstrates that (1) LVNV was ever assigned or purchased the Debt and (2) that LVNV was assigned any or all of Citibank's legal rights in the Card Agreement, including the right to compel arbitration. It is respectfully submitted that the complete failure by Defendants to prove these two basic facts is fatal to their Motion and it should be denied on this basis.

## POINT IV

## DEFENDANTS ARE NOT "CONNECTED WITH" CITIBANK AND EVEN IF THEY WERE THEY COULD STILL NOT COMPEL ARBITRATION

**A. Introduction.**

Even if this Court were to consider the unauthenticated Card Agreement as evidence in deciding this Motion, Defendants' Motion should still be denied because Defendants are not connected with Citibank in anyway. Furthermore, even if they were, the plain language of the Card Agreement only permits Plaintiff or Citibank to compel arbitration, not any entities that may be "connected with" Citibank.

**B. Defendants Are Not Connected With Citibank.**

**1. LVNV Has Not Proven They Are The Subsequent Owner Of The Debt.**

LVNV argues that they may compel arbitration because, "Plaintiff has sued Defendants based on their representation that LVNV is the subsequent owner of Plaintiff's debt with Citibank. LVNV is connected with Citibank in a manner that allows it to enforce the arbitration provision." (see Defs.' Motion p. 10). LVNV's sole argument for why they are "connected with" Citibank is that they are the subsequent owner of Plaintiff's Debt. However, as stated above, Plaintiff never alleged in his complaint that LVNV was the subsequent owner of the Debt and Plaintiff denied that LVNV ever owned his debt or that he owed the Debt to LVNV. (Cmplt., ¶¶ 31- 34).

Furthermore, Defendants have submitted no proof that (1) LVNV was ever assigned the Debt and (2) that LVNV was assigned any or all of Citibank's legal rights in the Card Agreement pertaining to arbitration. Is LVNV an assignee of Citibank and were they assigned Citibank's rights pertaining to arbitration? These questions are impossible to answer because LVNV did not submit any proof related to either question in their Motion. It is impossible to tell if LVNV is "connected with" Citibank as a subsequent owner of the Debt because there is no evidence before this Court from LVNV like a Bill of Sale or assignment agreement proving that they were ever assigned the Debt. Furthermore, there is no evidence submitted by LVNV as to what if any rights pertaining to arbitration were included in any alleged sale. Therefore, LVNV's argument that they are "connected with" Citibank because they are the subsequent owner of the Debt must be rejected.

**2. Resurgent Is Not "Connected With" Citibank.**

Resurgent has failed to establish that it is sufficiently "connected with" Citibank. Resurgent is not an employee, agent, or representative of Citibank, but rather, a debt collector hired by Citibank's **alleged** assignee, LVNV. This relationship between Defendant and Citibank

is too attenuated for Resurgent to be considered "connected with" Citibank. *See* <u>McGinnis v. John C. Bonewicz, P.C.</u>, 2012 WL 604430, at *4 (C.D. Ill. Feb. 2, 2012) (concluding that a debt collector hired by Citibank's assignee could not compel arbitration under an arbitration clause like the one here), *report and recommendation adopted*, 2012 WL 604427, at *1 (C.D. Ill. Feb. 24, 2012).

In <u>Madorskaya v. Frontline Asset Strategies, LLC</u>, 2021 WL 3884177 (E.D.N.Y. Aug. 31, 2021), the Court rejected an identical argument to the one Resurgent makes holding "Even if the language of the Arbitration Clause does allow "anyone connected with" Citibank to compel arbitration, Defendant has failed to establish that it is sufficiently "connected with" Citibank. Defendant is not an employee, agent, or representative of Citibank, but rather, a debt collector hired by Citibank's assignee, JH Portfolio…" <u>Id</u>. at *8.

It is respectfully submitted that this Court follow the decisions in <u>McGinnis</u> and <u>Madorskaya</u> and find that Resurgent is not "connected with" Citibank because they are not an employee, agent or representative of Citibank and were never hired by Citibank to collect the Debt, but merely a debt collector hired by an alleged assignee of Citibank.

### 3. Conclusion.

LVNV has submitted no proof that they are the assignee of Citibank and therefore their claim that they can compel arbitration because they are "connected to" Citibank must be denied. Resurgent is clearly not connected with Citibank and has no relationship with them. Therefore their claim that they can compel arbitration because they are "connected to" Citibank must also be denied.

### C. The Plain Language Of The Card Agreement Does Not Permit Defendants To Demand Arbitration.

1. **Introduction.**

Even if this Court were to consider the unauthenticated Card Agreement, as shown below, a careful analyzation of the terms of the arbitration clause plainly establishes that it may not be invoked by third-party debt collectors like Defendants who are not a "we" or "us" as those terms are defined in the Card Agreement.

2. **The Terms And Definitions Of The Card Agreement And Arbitration Clause.**

Notably absent from Defendants' Motion is a discussion of the **definitions** of the terms used in the Card Agreement and the arbitration clause contained therein. This absence is not by accident because when reading the arbitration clause in the Card Agreement using the definitions of the terms contained therein, it is clear that Defendants' Motion has no legal grounds upon which to stand. The Card Agreement that the Defendants rely on is crystal clear about which individuals or entities can invoke the arbitration clause contained in that Agreement. Here are the relevant provisions of that Card Agreement:

- "DEFINITIONS - Lists the meanings of particular phrases and terms used in the Card Agreement." *See,* Doc. 15-3, p. 4

- "CARD AGREEMENT - This Card Agreement (Agreement) is your contract with **us**." *See,* Doc. 15-3, page 5 (emphasis added).

- "**we**, **us**, and **our** - Citibank, N.A." *See,* Doc. 15-3, page 5, in Section 'DEFINITIONS' (emphasis in original).

- "**You** or **we** may arbitrate any claim, dispute or controversy between **you** and **us** arising out of or related to your Account, a previous related Account or our relationship (called "Claims")." *See,* Doc. 15-3, page 11 (emphasis added).

- "If arbitration is chosen by **any party**, neither **you** nor **we** will have the right to litigate that Claim in court or have a jury trial on that Claim." *See,* Doc. 15-3, page 11 (emphasis added).

- "**We** won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim **against us**. *If* you assert a Claim against **us**, **we** can choose to arbitrate, including actions to collect a debt from you. You may arbitrate on an individual basis

Claims brought against you, including Claims to collect a debt." *See,* Doc. 15-3, page 11 (emphasis added).

- "Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. *If* arbitration is chosen by **any party**, neither **you** nor **we** may pursue a Claim as part of a class action or other representative action." *See,* Doc. 15-3, page 11 (emphasis added).

As the Cardmember Agreement plainly states, in the plainest English, "**You** or **we** may arbitrate any claim, dispute or controversy between **you** and **us** arising out of or related to your Account, a previous related Account or our relationship (called "Claims"). If arbitration is chosen by *any party*, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim." *See,* Doc. 15-3, page 11 (emphasis added) And the class waiver similarly provides that "**We** won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim **against us**. *If* arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action or other representative action." *See Id*.

Thus, under the plain language of this contract, only two classes of individuals can require that a Claim be arbitrated: (1) 'you', or (2) 'we'. However, Defendants are not a party to the Agreement between Plaintiff and Citibank. The Agreement is very specific about the two parties to the Agreement: "This Card Agreement is your contract with **us**." *See,* Doc. 15-3, page 5. And the Agreement further goes on to specifically define "**we, us,** and **our**" as "Citibank, N.A." *See id*. The parties to the Agreement are thus (1) Citibank, and (2) Plaintiff. That is it.

### 3. Resurgent May Not Compel Arbitration Under The Plain Terms Of The Card Agreement.

In their Motion, Resurgent conspicuously does not argue that an arbitration agreement exists between Plaintiff and themselves. Instead, Resurgent only argues that an arbitration agreement exists between Plaintiff and Citibank. Even assuming that a valid agreement to

arbitration exists between Plaintiff and Citibank in the Card Agreement and all the rights therein were assigned to LVNV, as per the express terms of that same arbitration agreement, Resurgent has no legal authority to make a demand for arbitration because they do not meet the definition of a party ("we") or ("us") who has that right.

The arbitration clause in the Card Agreement is not mandatory; it does not require that every dispute falling within its scope be arbitrated. The arbitration clause is only triggered **IF** a demand is made by either Plaintiff ("you") or Citibank ("we"). The Card Agreement grants only "you" (Plaintiff) and "we" or "us" (Citibank) the right to make a demand for arbitration. Resurgent is neither a "you" nor a "we" or "us" as those terms are defined in the Card Agreement, and as such, Plaintiff never agreed or bargained in the Card Agreement to give Resurgent the right or power to demand arbitration of a claim he makes against them.

### 4. Case Law Holds That Resurgent May Not Compel Arbitration.

In <u>Madorskaya</u>, 2021 WL 3884177, the Court recently rejected the exact same argument that Resurgent makes regarding their "connected with" argument when analyzing the same Citibank credit card agreement and South Dakota law. The Court in Madorskaya held:

> Contrary to Defendant's contention, the plain language of the Arbitration Clause does not say that it "cover[s] 'anyone connected with 'Citibank." Rather, the Clause's plain language is that it covers "*Claims* made by or against anyone connected with" Citibank. (*See* Agreement, Dkt. 28-1, at ECF 11 (emphasis added).) **This distinction makes all the difference here,** *i.e., who* **can invoke the Arbitration Clause versus** *what* **claims can be arbitrated**. The Court cannot ignore the Clause's explicit statement that "[y]ou or we may arbitrate," and that "you" and "we" are respectively defined as "[t]he cardmember who opened the Account" and "Citibank, N.A."…**That the Arbitration Clause covers "Claims made by or against anyone connected with us or you" does not expand the scope of the "[y]ou or we" who may compel arbitration…Instead, the natural reading of the language of the Arbitration Clause as a whole is that certain entities—namely, "[y]ou or we"—may elect to arbitrate, and if one such entity elects to arbitrate, all "Claims," including ones by or against "connected" entities, are subject to arbitration**. (*See id*.) Such a reading affords the words of the Arbitration Clause their plain and ordinary meaning…

<u>Id</u>. at *7. (Emphasis Added)

Accordingly, the Court agrees with and follows other courts that have concluded that an arbitration clause like the one here "expressly permits only Citibank or Plaintiff to compel arbitration, but permits either of those parties to have other claims included in arbitration." *See* <u>Saroza v. Client Servs., Inc</u>., No. 17-CV-3429, 2020 WL 948793, at *3 (D.N.J. Feb. 27, 2020); *see also* <u>White v. Sunoco, Inc</u>., 870 F.3d 257, 267-68 (3d Cir. 2017) (rejecting, in dicta, an argument that "confuses the nature of the claims covered by the arbitration clause with the question of who can compel arbitration"); <u>Fox v. Nationwide Credit, Inc</u>., 2010 WL 3420172, at *3 (N.D. Ill. Aug. 25, 2010) ("[T]he definition of `Claims' only determines the types of disputes that can be resolved through arbitration and does not expand the scope of the parties subject to the arbitration clause[.]"). *See generally* <u>Cooper</u>, 990 F.3d at 179 (explaining that courts analyze two separate factors in deciding arbitrability: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue"). Indeed, to accept Defendant's proposition that the plain language of the Arbitration Clause allows "anyone connected with" Citibank (or Plaintiff) to compel arbitration would be to render extraneous, or ignore, the Clause's express—and bolded—provision that "[y]ou or we may arbitrate."

<u>Id.</u> at *8.

For the sake of brevity, the following are other cases not cited in <u>Madorskaya</u> where Courts have denied a debt collector's motion to compel arbitration of an FDCPA case because they did not meet the definition of a party ("we" or "us") who had the right elect or demand arbitration: <u>Pacanowski v. Alltran Financial, LP</u>, 271 F. Supp. 738 (M.D. Penn. 2017), <u>McGinnis v. John C. Bonewicz, P.C.</u>, 2012 WL 604430 (C.D. Ill. Feb. 2, 2012); <u>Marcial v. Springleaf Financial Services, Inc</u>., 2014 WL 6453781 (D. Oregon Nov. 17, 2014); and <u>Lucy v. Bay Area Credit Svc LLC</u>, 792 F. Supp. 2d 320 (D. Conn. 2011).

In addition, several circuit courts have issue rulings that further the arguments made by Plaintiff above. In <u>Cavlovic v. J. C. Penney Corp</u>., 884 F.3d 1051 (10th Cir. 2018), the plaintiff brought a class action complaint against J.C. Penney alleging violations of state consumer protection laws. J.C. Penney moved to compel arbitration. J.C. Penney argued a credit card agreement between plaintiff and GE Capital Retail Bank, the card issuer of a J.C. Penney-branded credit card, required plaintiff to arbitrate her claims. <u>Id</u>. at 1054. The arbitration clause in the agreement between plaintiff and GE Capital Retail provided "[i]f either **you** or **we** make a

demand for arbitration, you and we must arbitrate any dispute or claim between you and any other user of your account, and us, our affiliates, agents and/ or J.C. Penney Corporation, Inc. if it relates to your account, except as noted below…" Id. at 1057 (Emphasis Added). The 10th Circuit Court of Appeals, affirming the district court, held the arbitration provision in the agreement between plaintiff and GE Capital did not permit JC Penny to demand arbitration as evidenced by the fact that JC Penny did not fall within the definition of the terms "you" and "we" in the card agreement. Specifically, the 10th Circuit held:

> A plain reading of this provision leads us to conclude that arbitration is required if either "you" (Cavlovic) or "we" (GE Capital Retail Bank) demand arbitration. Here, neither Cavlovic nor GE Capital Retail Bank — nor its successor, Synchrony Bank — demanded arbitration. Only J.C. Penney demanded arbitration. And the contract, on its face, does not provide for such a third party demand.

> Id. at 1057.

The Eleventh Circuit in Lawson v. Life of the South Insurance Company, 648 F.3d 1166 (11th Cir. 2011) likewise held that a third-party defendant could not compel arbitration because that right was limited to parties who were defined as a "we" in the underlying agreement. It is respectfully submitted that these decisions in Cavlovic and Lawson further establish that whether a third-party non-signatory may demand or compel arbitration depends on whether they meet the definition of a party "we" or "us" with that right under the underlying agreement. Applying the holdings of Cavlovic and Lawson to the facts of this matter, Resurgent clearly cannot compel arbitration because they do not meet the definition of "we" or "us" in the Card Agreement.

**5. LVNV May Not Compel Arbitration Because They Have Not Shown They Were Assigned The Debt And The Arbitration Rights In The Card Agreement.**

LVNV has not submitted any proof in their Motion that (1) they were ever assigned the Debt and (2) were assigned any of Citibank's legal rights in the Card Agreement pertaining to arbitration. Is LVNV an assignee of Citibank and were they assigned all of Citibank's rights in

the Card Agreement including rights pertaining to arbitration? It is impossible to determine because LVNV did not submit any proof related to either question in their Motion.

Even if Defendants could show that LVNV was assigned the Debt, that doesn't mean they were assigned Citibank's rights in the Card Agreement pertaining to arbitration. Courts have consistently denied motions to compel arbitration in FDCPA cases when entities claiming to be assignees were only assigned the receivables (the right to collect the debt) but no other rights, including ones related to arbitration. *See* <u>Garcia v. Midland Funding, LLC</u>, WL 1807563, at *3 (D.N.J. May 5, 2017) (explaining that "even with a 'healthy regard for the strong federal policy in favor of arbitration,' the Agreement did not clearly convey the right to demand individual arbitration" because it conferred rights associated with the "Receivable," not the "Account," and the "right to compel arbitration for Plaintiff's FDCPA claim is not associated with legally enforcing, filing suit, collecting, settling, or a similar action with respect to the receivable"); <u>Lester v. Portfolio Recovery Assocs., LLC</u>,, 2018 WL 3374107, at *7 (N.D. Ala. July 11, 2018) ("The declaration also contradicts the Bill of Sale attached thereto, which purports to convey only `receivables.' PRA has cited no evidence that the right to arbitrate was transferred, or that it was Synchrony's intent to transfer to PRA the right to arbitrate."). see also <u>Rodriguez-Ocasio v. Midland Credit Management, Inc</u>., 2021 WL 3758077 (D.N.J. Aug. 25, 2021) (finding the right to compel arbitration was not transferred from the original creditor to Midland Credit Management because only the receivables were sold).

**6. Conclusion.**

Arbitration is a matter of contract, and the express terms of the arbitration clause in the Card Agreement and the definitions of the terms used therein are clear. Resurgent does not meet the definition of "we", "us" or "you" and as such, Resurgent has no legal authority under the

Card Agreement to invoke the arbitration clause. LVNV has submitted no proof that they are the assignee of Citibank and that Citibank assigned to them the arbitration rights contained in the card agreement. Therefore, Defendants' Motion must be denied.

<b><u>POINT V</u></b>

<b><u>DEFENDANTS MAY NOT COMPEL ARBITRATION AS THIRD-PARTY BENEFICIARIES</u></b>

**A. Introduction.**

Even if this Court were to consider the unauthenticated Card Agreement as evidence in deciding this Motion, Defendants' Motion should still be denied because neither Defendant can compel arbitration as Third-Party Beneficiaries of the Card Agreement.

**B. South Dakota Law.**

Under South Dakota law, "[a] contract made expressly for the benefit of a third person may be enforced by [that person] at any time before the parties thereto rescind it." <u>Jennings v. Rapid City Reg'l Hosp., Inc</u>., 802 N.W.2d 918, 921 (S.D. 2011) (quoting S.D. Codified Laws § 53-2-6). "This does not, however, entitle every person who received some benefit from the contract to enforce it." <u>Masad v. Weber,</u> 772 N.W.2d 144, 153 (S.D. 2009) (quoting <u>Sisney v. State</u>, 754 N.W.2d 639, 643 (S.D. 2008)). Rather, "the rule requires that at the time the contract was executed, it was the contracting parties' intent to expressly benefit the third party." <u>Id</u>. (quoting <u>Sisney</u>, 754 N.W.2d at 643); *accord* <u>Jennings</u>, 802 N.W.2d at 921. This rule means that "[t]he terms of the contract must clearly express intent to benefit that party or an identifiable class of which the party is a member." <u>Jennings</u>, 802 N.W.2d at 922(quoting <u>Sisney v. Reisch</u>, 754 N.W.2d 813, 818 (S.D. 2008)). Moreover, "a third-party beneficiary must show 'that the contract was entered into by the parties **directly and primarily for his [or her] benefit**.'" *Id*. at 923 (**Emphasis Added**) (quoting <u>Masad</u>, 772 N.W.2d at 154). In other words,

the purported third-party beneficiary **must show that but for them**, the contracting parties would not have entered into the contract. *See* Id. *(Emphasis Added)*

## C. Defendants Are Not Third-Party Beneficiaries Of The Card Agreement.

### 1. LVNV Has Provided No Evidence They Were Assigned The Debt And The Right Enforce The Arbitration Clause.

LVNV argues that they may compel arbitration as a third-party beneficiary to the Card Agreement because the arbitration provision contained therein "evidences an intent by the parties to apply the arbitration provision to subsequent purchasers of the debt." (see Defs.' Motion p. 12). LVNV's entire argument for why they may compel arbitration as a third-party beneficiary is based on their argument that they are an assignee of Citibank. Defendants' argument fails however because as demonstrated above and below, Defendants have submitted no proof that (1) LVNV was ever assigned the Debt and (2) that LVNV was assigned any or all of Citibank's legal rights in the Card Agreement, including the right to compel arbitration. Is LVNV an assignee of Citibank and were they assigned Citibank's rights in the Card Agreement pertaining to arbitration?  It is impossible to determine because LVNV did not submit any proof related to either question in their Motion.

Even if Defendants could show that LVNV was assigned the Debt, that doesn't mean they were assigned all of Citibank's rights in the Card Agreement, including rights pertaining to arbitration, and thus can compel arbitration as a third-party beneficiary. As stated above, Courts have consistently denied motions to compel arbitration in FDCPA cases when debt collectors were only assigned the receivables (the right to collect the debt) but no other rights, including ones related to arbitration. *See* Garcia v. Midland Funding, LLC, WL 1807563, at *3 (D.N.J. May 5, 2017); Lester v. Portfolio Recovery Assocs., LLC,, 2018 WL 3374107, at *7 (N.D. Ala.

July 11, 2018), and <u>Rodriguez-Ocasio v. Midland Credit Management, Inc</u>., 2021 WL 3758077 (D.N.J. Aug. 25, 2021).

In sum, LVNV cannot be a third-party beneficiary of the Card Agreement and the arbitration clause contained therein if they were never actually sold Plaintiff's alleged Debt. Furthermore, LVNV cannot be a third-party beneficiary of the Card Agreement and arbitration clause contained therein if Citibank never assigned to LVNV Citibank's rights in the Card Agreement pertaining to arbitration. Defendants lack of proof as to both of these issues requires that this Court deny Defendants' Motion.

**2. The Card Agreement Was Not Entered Into To Expressly Benefit Defendants.**

The Card Agreement in this case, including the Arbitration Clause, does not clearly show that at the time it was executed, the contracting parties intended to expressly benefit Defendants—*i.e.*, an alleged assignee and a debt collector hired by the assignee. To be sure, the Arbitration Clause in the Agreement covers "all Claims," including "Claims made by or against anyone connected with" Citibank or the cardmember. (Card Agreement, Dkt. 15-3, at ECF 11.) The Card Agreement also allows Citibank to "assign any or all of [its] rights and obligations under [the] Agreement to a third party." (<u>Id</u>. at ECF 12.) But as already discussed, those provisions do not mean that "anyone connected with" Citibank (or with the cardmember) may compel arbitration, particularly given that the Arbitration Clause states expressly, and in bold font, "you [*i.e.*, Plaintiff] or we [*i.e.*, Citibank, N.A.] may arbitrate." (*See* <u>Id</u>. at ECF 5, 11.) Accordingly, the Agreement does not clearly demonstrate an express intent to benefit "anyone connected with" Citibank or the cardmember.

Certainly, the Card Agreement does not show that it was entered into "directly and primarily" for the benefit of Resurgent, or debt collectors in Resurgent's position. See <u>Jennings</u>,

802 N.W.2d at 923(quoting <u>Masad</u>, 772 N.W.2d at 154); *see also* <u>Orn v. Alltran Fin., L.P.</u>, 779 F. Appx. 996, 998 (3d Cir. 2019) ("Without evidence that Citibank and its cardholders would not have entered the card agreement but for the intent to benefit debt collectors like [defendant], it cannot enforce the arbitration provision as a third-party beneficiary under South Dakota law." (citing <u>Masad</u>, 772 N.W.2d at 153-54)). Rather, "it is apparent that the Card Agreement was entered into by the parties directly and primarily for the benefit of Citibank," and that any benefit to parties like Defendant is merely incidental. *See* <u>White v. Sunoco Inc</u>., 189 F. Supp. 3d 486, 493 (E.D. Pa. 2016) (internal quotation marks and citation omitted), *aff'd on other grounds*, 870 F.3d 257, 262-65 (3d Cir. 2017); *see also* <u>Masad</u>, 772 N.W.2d at 153-54 ("[I]ncidental beneficiaries are not entitled to third-party beneficiary status." (quoting <u>Sisney</u>, 754 N.W.2d at 643)).

Any notion that the Card Agreement was entered into between Plaintiff and Citibank directly and primarily for the benefit of Resurgent or that but for the intent to benefit Resurgent, Plaintiff and Citibank would not have entered into the Card Agreement is laughable. Therefore, Defendants may not compel arbitration as a third-party beneficiaries.

### 3.  Case Law Demonstrates Defendants Are Not Third-Party Beneficiaries.

In <u>Madorskaya v. Frontline Asset Strategies, LLC</u>, 2021 WL 3884177 (E.D.N.Y. Aug. 31, 2021), the Court recently rejected an identical argument made by a debt collector seeking to compel arbitration of an FDCPA case on the basis that they were a third-party beneficiary to an underlying Citibank credit card agreement.

Judge Chen in <u>Madorskaya</u>, using South Dakota law, rejected the same arguments that Resurgent makes herein. Specifically, the Court in Madorskaya held:

> The Agreement in this case, including the Arbitration Clause, does not clearly show that at the time it was executed, the contracting parties intended to expressly benefit

Defendant—*i.e.*, a debt collector hired by an assignee. To be sure, the Arbitration Clause in the Agreement covers "all Claims," including "Claims made by or against anyone connected with" Citibank or the cardmember…The Agreement also allows Citibank to "assign any or all of [its] rights and obligations under [the] Agreement to a third party."…But as already discussed, those provisions do not mean that "anyone connected with" Citibank (or with the cardmember) may compel arbitration, particularly given that the Arbitration Clause states expressly, and in bold font, "you [*i.e.*, Plaintiff] or we [*i.e.*, Citibank, N.A.] may arbitrate."…**Accordingly, the Agreement does not clearly demonstrate an express intent to benefit "anyone connected with" Citibank or the cardmember.**

Id. at * 13 (Emphasis Added)

Certainly, the Agreement does not show that it was entered into "directly and primarily" for the benefit of Defendant, or debt collectors in Defendant's position…Rather, it is apparent that the Agreement was entered into by the parties directly and primarily for the benefit of Citibank and that any benefit to parties like Defendant is merely incidental

Id. (Internal quotations omitted)

It is respectfully submitted that this Court follow the Madorskaya decision and similarly deny Defendants argument that they are third party beneficiaries of the Card Agreement.

**4. Conclusion.**

The Card Agreement allowed Citibank to "assign **any or all** of [its] rights and obligations under [the] Agreement to a third party." The main issues that would need to be decided before this Court could determine if LVNV is a third-party beneficiary are (1) whether LVNV was assigned Plaintiff's debt and (2) whether LVNV was assigned Citibank's rights pertaining arbitration. This determines whether Citibank intended to benefit LVNV with the arbitration provision. LVNV cannot plausibly argue that Citibank intended to benefit them (or any other assignee for that matter) by including the arbitration provision in the Card Agreement if Citibank never actually included those arbitration rights in any sale of the Debt. It is respectfully submitted that because LVNV has submitted no proof that that they were assigned the Debt or Citibank's rights in the Card Agreement, their third-party beneficiary argument must be denied.

Resurgent's third-party beneficiary argument must be denied because as shown above, the Card Agreement was clearly not entered into by Plaintiff and Citibank for Resurgent's primary benefit, and any benefit they may get from it is merely incidental.

## POINT VI

## DEFENDANTS MAY NOT COMPEL ARBITRATION UNDER EQUITABLE ESTOPPEL

**A. Introduction.**

Even if this Court were to consider the unauthenticated Card Agreement as evidence in deciding this Motion, Defendants' Motion should still be denied because neither Defendant can compel arbitration under an equitable estoppel theory.

Defendants argue that they can compel plaintiff to arbitrate his claims under the doctrine of equitable estoppel. *See* Defs.' Mot. Pgs. 12-13. They assert that it would be inequitable for plaintiff to avoid arbitration in this case because plaintiff's claims are "intertwined with the agreement that the signatory signed" Id. at 12. As demonstrated below, whether this Court uses South Dakota or New York law, Defendants cannot compel arbitration under an equitable estoppel theory because Plaintiff's FDCPA claims are not intertwined with the Card Agreement.

**B. Equitable Estoppel Law.**

Although state law is the applicable law for purposes of construing the Arbitration Clause, *see* Arthur Andersen, 556 U.S. at 630-31, Courts in this Circuit have found that the federal common law in the Second Circuit has developed a test for equitable estoppel that is comparable to the one under South Dakota law. *See* Madorskaya v. Frontline Asset Strategies, LLC, 2021 WL 3884177, at *19 n. 5 (E.D.N.Y. Aug 31, 2021)("federal common law in the

Second Circuit has developed a test for equitable estoppel that is comparable to the one under South Dakota law.")

A signatory to an arbitration clause is estopped from refusing to arbitrate against a non-signatory where (1) "the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed" and (2) there is "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute" with the non-signatory. Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 127 (2d Cir. 2010)(internal quotations omitted); *accord* Doe v Trump Corp., 453 F. Supp. 3d 634, 640 (S.D.N.Y. 2020). "When assessing relationships between signatories and non-signatories to an arbitration agreement, the Second Circuit has noted that estoppel cases have tended to share a common feature in that the non-signatory party asserting estoppel has had some sort of corporate relationship to a signatory party; that is, [the Circuit] has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities." Meridian Autonomous Inc. v. Coast Autonomous LLC, No. 17 Civ. 5846, 2020 WL 496078, at *3 (S.D.N.Y. Jan. 30, 2020)

The purpose of equitable estoppel is to avoid an unfair result: permitting a signatory to an arbitration agreement to evade arbitration by suing non-signatory defendants for claims that are based on the same facts and inherently inseparable from arbitrable claims. *See* Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 361 (2d Cir. 2008); *accord* Meridian Autonomous, 2020 WL 496078, at *2. *see also* Lenox MacLaren Surgical Corp., 449 F. App'x 704 (10th Cir. 2011) ("A signatory plaintiff cannot, on the one hand, seek to hold the non-signatory liable **pursuant to duties imposed by the agreement**, which contains an arbitration provision, but, on

the other hand, deny arbitration's applicability because the defendant is a non-signatory."

(**Emphasis Added**)

### C.  Defendants Cannot Compel Arbitration Under An Equitable Estoppel Theory.

The Plaintiff's claims are based on the FDCPA—not on the terms of or duties imposed by the Citibank Card Agreement. The Card Agreement has nothing to do with Plaintiff's claims in this matter and does not form the legal basis for Plaintiff's claims against Defendants. Plaintiff is not suing LVNV or Resurgent alleging they violated the terms of the Card Agreement nor is Plaintiff suing Defendants for violating duties imposed on them by the Card Agreement, namely because there were no duties imposed on Defendants by the Card Agreement. In short, the Card Agreement does not form the basis of the FDCPA claims made by Plaintiff against Defendants.

Plaintiff is suing Defendants because they engaged in abusive, deceptive, false and misleading conduct in violation of the FDCPA in attempting to collect the Debt and not breach of contract related to the card agreement (as might be expected if he were relying on the card agreement). Simply put, there is nothing in the Card Agreement or its terms that has anything to do with the basis of Plaintiff's claims against LVNV or Resurgent. Because Plaintiff's claims are separate from the Card Agreement (and its arbitration clause), his claims are thus not so "intertwined with" the Card Agreement.

Finally, in bringing his claims, Plaintiff does not seek to benefit from the Card Agreement, consequently, there is nothing inequitable about declining to enforce the Arbitration Provision against Plaintiff.

### D.  Case Law Holds That Defendants Cannot Compel Arbitration Under An Equitable Estoppel Theory.

Defendants' equitable estoppel argument has been consistently rejected in FDCPA cases by Courts across the Country on the basis that the FDCPA claims are not intertwined with the

underlying credit card agreements, and that a "but for" relationship between the card agreement and the underlying debt is not enough to invoke estoppel. Recently, in <u>Ferro v. Allied Interstate, LLC</u>, 2019 WL 3021234 (E.D.N.Y. 2019) the Court rejected a nearly identical argument made by a debt collector seeking to enforce an arbitration provision under the doctrine of equitable estoppel. In <u>Ferro</u>, the non-signatory defendant tried to compel arbitration of an FDCPA claim against them under an equitable estoppel theory. The Court, rejected this theory holding:

> plaintiff's claims against the Allied defendants are not based "on the contract…Because this is an essential element of the equitable estoppel doctrine…[] defendants may not invoke the doctrine of equitable estoppel to compel arbitration of plaintiff's claims against them…

> In sum, equitable estoppel **applies only where the arbitration agreement "form[s] the legal basis" for plaintiff's claims against the non-signatories; "it is not enough that the contract is factually significant to plaintiff's claims or has a 'but-for' relationship with them**. (**Emphasis Added**) Though plaintiff's agreement with Synchrony entitled Synchrony to place plaintiff's debt with the [] defendants for collection…the agreement does not itself form the basis for plaintiff's claims against the [] defendants. As a result, the [] defendants may not use the arbitration agreement between plaintiff and Synchrony to compel arbitration.

> <u>Id</u>. at * 6.

In <u>Wojcik v. Midland Credit Management, Inc.</u>, 2019 WL 342356 (E.D.N.Y. 2019), the Court rejected a debt collector's equitable estoppel holding:

> Plaintiff's suit against Defendant is not based "on the contract."…Plaintiff's claims arise out of Defendant's action in sending the February 2017 Letter to Plaintiff to collect a debt on the Account, which allegedly "deprived [Plaintiff] of his rights not to be subject to abusive, deceptive, or misleading debt collection practices." Plaintiff's claims therefore arise out of Defendant's actions as a debt collector and do not concern the Agreement which governs his Amazon.com cardholder relationship.

> <u>Id</u>. at *6.

The <u>Wojcik</u> Court further held:

> "Although absent the Agreement, Defendant may not have sent Plaintiff the February 2017 Letter, **a but-for relationship is insufficient to show that Plaintiff's claims are based "on the contract."** *See* <u>Lenox MacLaren Surgical Corp.</u>, 449 F. App'x at 709 ("For a plaintiff's claims to rely on the contract containing the arbitration provision, the contract must form the legal basis of those claims; it is not enough that the contract is

factually significant to the plaintiff's claims or has a 'but-for' relationship with them.") (**Emphasis Added**); *see also* In re Humana Inc. Managed Care Litig., 285 F.3d 971, 976 (11th Cir. 2002) ("The plaintiff's *actual dependence* on the underlying contract in making out the claim against the nonsignatory defendant is ... always the sine qua non of an appropriate situation for applying equitable estoppel."), *rev'd on other grounds*, PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401 (2003).

Id.

Similarly, in Untershine v. Advanced Call Center Technologies, LLC, 2018 WL 3025074 (E.D. Wisc. 2018), the court held that a claim based on deceptive debt collection practices did not fall under the terms of the plaintiff's arbitration agreement with a creditor. Id. at *10. Though there was necessarily a factual relationship between the underlying credit card agreement and plaintiff's FDCPA claims, those claims "ar[o]se from [the defendant's] conduct as a non-signatory debt collector—not from the terms of the credit card agreement." Id.

In Fox v. Nationwide Credit Incorporated, 2010 WL 3420172 (N.D. Ill. Aug. 25, 2010) the Court held that the plaintiff's FDCPA claim was not intertwined with the cardholder agreement because they did not have to rely on the terms of the cardholder agreement in asserting the FDCPA claim. The Fox Court held that the cardholder agreement between the plaintiff and GE Money Bank had nothing to do with the plaintiff's FDCPA claim against the debt collector defendant stating, "In the case at bar, Plaintiff is not making her claim based on the rights set out in her cardholder agreement, or even raising an issue as to the validity of the credit-card debt sought to be collected by NCI. Her claims are based only on the conduct of NCI in the course of attempting to collect a debt." Id, at n. 4. *See also* Mims v. Global Credit and Collection Corporation, 803 F. Supp. 2d 1349, 1358 (S.D. Fla. 2011) ("Although the claims presume the existence of the Agreement, they do so purely for the purpose of noting there is an underlying debt. As such, the claims are not **intertwined** with the Agreement between Plaintiff

and Capital One…Therefore, it is not appropriate to apply the doctrine of equitable estoppel to compel arbitration in this case.").

The only case Defendants cite to in favor of their equitable estoppel argument is <u>Fedotov v. Peter T. Roach & Assocs., P.C.</u>, 2006 WL 692002 (S.D.N.Y. Mar. 16, 2006). Defendants' reliance on <u>Fedotov</u> is misplaced because <u>Fedotov</u> did not involve a discussion of equitable estoppel at all and equitable estoppel had nothing to do with the decision.

### E.  Conclusion.

Equitable Estoppel is a principle wherein a party that sues attempting to enforce the terms of a contract cannot turn around and deny the arbitration provision of that same contract. This is not what is happening here because Plaintiff is not suing to enforce the terms of the Card Agreement. Therefore, for all the reasons set forth above, Defendants' argument that Plaintiff is equitable estopped from denying arbitration must be rejected.

## POINT VII

## DEFENDANT'S REMAINING ARGUMENTS ARE INAPPLICABLE

On page 6 of their Motion, Defendants cite to a multitude of case law. However, all the cases cited by Defendants involve Citibank as the defendant. In those cases, it was Citibank, and not a non-signatory like LVNV and Resurgent, who was attempting to enforce the arbitration agreement between themselves and the plaintiff(s). Therefore, these cases are irrelevant to this matter.

**POINT VIII**

**ANY ARGUMENTS MADE OR DOCUMENTS SUBMITTED BY DEFENDANTS FOR THE FIRST TIME IN ANY REPLY BRIEF MUST NOT BE CONSIDERED**

Plaintiff anticipates that Defendants will make new arguments and submit new documents in their Reply Brief to attempt to cure the evidentiary defects pointed out in this brief. Plaintiff respectfully requests that this Court not consider any such argument or new evidence, including any bills of sale or other affidavits attempting to authenticate the Card Agreement that are submitted for the first time in Defendants' Reply Brief. A Court need not consider an argument made or document submitted for the first time on reply. Pettaway v. Nat'l Recovery Sols., LLC, 955 F.3d 299, 305 n.2 (2d Cir. 2020) (per curiam). *See also* Conn. Bar Ass'n v. United States, 620 F.3d 81, 91 n. 13 (2d Cir. 2010) ("Issues raised for the first time in a reply brief are generally deemed waived." (citing Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998)).

**CONCLUSION**

For all the reasons stated above, Defendant's Motion to Compel Arbitration must be denied

Dated: May 26, 2022

The Law Offices of Gus Michael Farinella, PC

/s/ Ryan Gentile

By:_____

Ryan Gentile, Esq.
110 Jericho Turnpike – Suite 100
Floral Park, NY 11001
Tel: 201-873-7675
rlg@lawgmf.com