**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Shimshon Wexler, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>LVNV FUNDING, LLC and RESURGENT CAPITAL SERVICES LP,<br><br>Defendants. | **Civil Action No. 1:22-cv-01348** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS**

**GORDON REES SCULLY MASUKHANI, LLP**
1 Battery Park Plaza, 28th Floor
New York, NY 10004
Telephone: (973) 549 2500
Fax: (973) 377 1911
*Attorneys for Defendants LVNV Funding, LLC and Resurgent Capital Services LP*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 1

I. Plaintiff Should be Compelled to Arbitration His Claims on an Individual Basis . 1

A. Patti Sexton's Declaration Authenticates the Credit Card Agreement........ 1

B. Plaintiff’s Debt Was Assigned to LVNV........ 3

C. Defendants Are Connected with Citibank and Can Enforce the Arbitration Provision........ 4

D. Defendants are Third-Party Beneficiaries of the Credit Card Agreement.. 5

E. Plaintiff is Estopped from Avoiding Arbitration ........ 6

II. The Sexton Declaration and Exhibits Should be Considered ........ 8

CONCLUSION........ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bannett v. Hankin*,
331 F. Supp. 2d 354 (E.D. Pa. 2004) ........ 7

*Clarke v. Alltran Financial, LP*,
No. 17-cv-3330, 2018 WL 1036951 (E.D.N.Y. Feb. 22, 2018)........ 6

*Conn. Bar Ass'n v. United States*,
620 F.3d 81 (2d Cir. 2010)........ 8

*E.I. DePont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*,
269 F.3d 187 (3d Cir. 2001)........ 7

*Fedotov v. Peter T. Roach & Assocs., P.C.*,
No. 03-cv-8823, 2006 WL 692002 (S.D.N.Y. Mar. 16, 2006) ........ 6

*Fraternal Order of Police, Lodge 1 v. City of Camden*,
842 F.3d 231 (3rd Cir. 2016)........ 2

*Garrett v. Margolis, Pritzker, Epstein & Blatt, P.A.*,
861 F. Supp. 2d 724 (E.D. Va. 2012)........ 4

*Gates v. Northland Group, Inc.*,
No. 1:16-cv-01492, 2017 WL 680258 (D.N.J. Feb. 1, 2017) ........ 6

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ........ 2

*Grigson v. Creative Artist Agency, LLC*,
210 F.3d 524 (5th Cir. 2000)........ 7

*Hautz Const., LLC v. H & M Dep't Store*,
No. 12-3478, 2012 WL 5880370 (D.N.J. Nov. 20, 2012)........ 8

*Heyman v. Citimortgage, Inc.*,
No. 14-1680, 2019 WL 2642655 (D.N.J. June 27, 2019) ........ 2

*Hines v. Overstock.com, Inc.*,
380 F. App'x 22 (2d Cir. 2010)........ 2

*In re Sia*,
No. 10-41873, 2013 WL 4547312 (Bankr. D.N.J. Aug. 27, 2013)........ 2

*Madorskaya v. Frontline Asset Strategies, LLC*,
No. 19-cv-895, 2021 WL 3884177 (E.D.N.Y. Aug. 31, 2021) ..... 5

*Mason v. Midland Funding, LLC*,
No. 1:16-cv-2867, 2021 WL 3017993 (N.D. Ga. Jan. 18, 2021) ..... 5

*McBro Planning and Dev. Co. v. Trianhle Elec. Const. Co., Inc.*,
741 F.2d 342 (11th Cir. 1984) ..... 7

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ..... 2

*Norton v. Sam's Club*,
45 F.3d 114 (2d Cir. 1998) ..... 8

*Pettaway v. Nat'l Recovery Sols., LLC*,
955 F.3d 299 (2d Cir. 2020) ..... 8

*PoolRe Ins. Corp. v. Organizational Strategies, Inc.*,
783 F.3d 256 (5th Cir. 2015) ..... 4

*Ramirez v. Midland Funding, LLC*,
No. 17-cv-2626, 2019 WL 2568478 (N.D. Ill. June 21, 2019) ..... 4

*Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Intern, Inc.*,
198 F.3d 88 (2d Cir. 1999) ..... 8

*Sisney v. Reisch*,
2008 S.D. 72 (South Dakota 2008) ..... 6

*United States v. Duncan*,
919 F.2d 981 (5th Cir. 1990) ..... 2

*Washington Central Railroad Co., Inc. v. National Mediation Board*,
830 F.Supp. 1343 (E.D. Wash. 1993) ..... 2

**Statutes**

15 U.S.C. § 1692d-g ..... 1

Fed. R. Evid. 803(6) ..... 3

S.D. Codified Laws 53-2-6 ..... 5

## PRELIMINARY STATEMENT

Plaintiff Shimson Wexler ("Plaintiff") does not dispute the validity of the Credit Card Agreement governing his Citibank, N.A. ("Citibank") credit card account, which contains an arbitration provision that survives the sale of his account to other entities. Plaintiff alleges that Defendants LVNV Funding, LLC ("LVNV") and Resurgent Capital Services LP ("Resurgent") (collectively "Defendants") violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692d-g ("FDCPA") by attempting to collect the debt after he submitted a one-time settlement payment to Resurgent. His entire Complaint is premised upon Defendants' having the contractual authority to settle the debt in the first place. Plaintiff cannot avoid arbitration by arguing that Defendants have no connection with Citibank and cannot enforce the arbitration provision.

Pursuant to the Credit Card Agreement, Plaintiff agreed to arbitrate "any claim, dispute or controversy . . . arising out of or related to your Account" and that the arbitration provision would apply to "[c]laims made by or against anyone connected with us or you." LVNV, a subsequent purchaser of Plaintiff's debt, and Resurgent, who was acting on LVNV's behalf, are each entitled to enforce the arbitration agreement pursuant to its express terms, as third-party beneficiaries, and through the doctrine of equitable estoppel. Accordingly, this matter should be compelled to arbitration, and the Complaint should be dismissed.

## ARGUMENT

### I. Plaintiff Should be Compelled to Arbitrate His Claims on an Individual Basis

#### A. Patti Sexton's Declaration Authenticates the Credit Card Agreement

The party seeking to compel arbitration has the burden of establishing that an arbitration agreement exists although "[t]his burden does not require the moving party to show initially that

the agreement would be *enforceable,* merely that one existed." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (emphasis in original). The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. V. Randolph,* 531 U.S. 79, 92 (2000). When deciding a motion to compel arbitration, the court need only apply a standard "similar" to the standard that applies to motions for summary judgment. *Meyer v. Uber Techs., Inc.* 868 F.3d 66, 74 (2d Cir. 2017).

Here, Defendants have met their burden of establishing that an arbitration agreement *exists*. Plaintiff acknowledges that he opened a credit card with an account number ending in 4826 issued by Citibank. (See Complaint ¶¶ 27-28). The Credit Card Agreement produced by Defendants, which includes an arbitration provision, is addressed to Plaintiff and identifies the account number ending in 4826. Obviously, an arbitration agreement exists. Tellingly, Plaintiff, who has the *burden* of demonstrating that the Credit Card Agreement is invalid, does not dispute its existence or that that it governs his account.

Furthermore, at the summary judgment stage, "the party proffering the declaration only need to show that the facts presented are 'capable of being admissible at trial' for them to be considered for summary judgment." *Heyman v. Citimortgage, Inc.*, 2019 WL 2642655, at *17 (D.N.J. June 27, 2019) (citing *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016)). Sexton's Declaration meets that low threshold because Sexton relied upon LVNV's business records as well as records from previous owners of Plaintiff's debt in making the Declaration. It is well established that "'personal knowledge can come from review of the contents of files and records.'" *In re Sia*, 2013 WL 4547312, at *5 (Bankr. D.N.J. Aug. 27, 2013) (quoting *Washington Central Railroad Co., Inc. v. National Mediation Board*, 830 F.Supp. 1343, 1353 (E.D. Wash. 1993)). The simple fact that some of the records were not created by

LVNV is inconsequential. *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990) (stating that there is "no requirement that the [business] records be created by the business having custody of them."). Sexton notes that exhibits to her Declaration were created by businesses other than LVNV. (*See* Sexton Dec. at ¶ 3). Nevertheless, Sexton states that these records have been incorporated into LVNV's records and "are relied upon by LVNV in conducting its business." *Id.* The business records exception to hearsay applies, as the Credit Card Agreement is a business record pursuant to Fed. R. Evid. 803(6).

As Plaintiff neither argues nor presents any evidence to dispute the validity of the Credit Card Agreement, he has failed to meet his burden. The Credit Card Agreement, including its arbitration provision, controls.

**B. Plaintiff's Debt Was Assigned to LVNV**

Plaintiff's next argument that this matter cannot go to arbitration because he does not admit owing a debt to LVNV in connection with his Citibank account belies common sense and contradicts his own actions. Plaintiff's alleged payment to Resurgent on February 15, 2021 to settle the debt with LVNV, which is the foundation of his *entire* Complaint, is premised on there being an assignment of the debt from Citibank to LVNV. Now, Plaintiff argues that he does not admit to ever owing money to LVNV, yet he agreed to pay LVNV to settle the debt. If Plaintiff did not owe any money to LVNV, why did Plaintiff make that payment? What authority would LVNV have to settle the debt if there was no assignment? Plaintiff is asserting an FDCPA claim based on Defendants' alleged failure to honor a settlement agreement to pay off the debt. Plaintiff cannot simultaneously argue that Defendants failed to honor his settlement agreement to pay off the debt while claiming that they could not extend that offer to settle the debt in the first place. Additionally, the Sexton Declaration demonstrates that Plaintiff's debt was assigned to

LVNV. (*See* Sexton Dec. at ¶ 7).

### C. Defendants Are Connected with Citibank and Can Enforce the Arbitration Provision

Both Defendants are "connected with" Citibank. The subject arbitration provision covers all "[c]laims made by or against anyone connected with us or you." (*See* Sexton Dec., Exhibit C, Credit Card Agreement, Section 11). It further states, "If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you." (*Id.*) Plaintiff's argument that Defendants cannot enforce the arbitration because they are not "we" or "us" (i.e., because they are not Citibank) contradicts the plain language in the arbitration provision, which clearly contemplates that parties other than Plaintiff and Citibank would seek to enforce it. This is further supported by the fact that the arbitration provision goes on to state that it survives changes to the Agreement and the termination of the account or the relationship between Plaintiff and Citibank, including "any sale of your Account, or amounts owed on your Account, to another person or entity." (*Id.*) Additionally, Section 13 of the Credit Card Agreement makes clear that Citibank "may assign any or all of [its] rights and obligations under this Agreement [including the right to arbitration] to a third party." (*Id.*)

Arbitration agreements that contain the language "connected with," as is the case here, are entitled to the broadest possible interpretation. *See PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 262 (5th Cir. 2015) ("Agreements mandating arbitration of disputes that 'relate to' or 'are connected with,' rather than merely 'arising out of,' a contract are 'broad arbitration clauses capable of expansive reach'"); *Garrett v. Margolis, Pritzker, Epstein & Blatt, P.A.*, 861 F. Supp. 2d 724, 728-29 (E.D. Va. 2012) (finding that "a debt collector acting on behalf of Citibank . . . is covered by the broad contract language . . ."); *Ramirez v. Midland Funding, LLC*, No. 17-cv-2626, 2019 WL 2568478, at *5 (N.D. Ill. June 21, 2019) (concluding

that “Midland, which stands in the shoes of the original creditors with respect to the card agreements [as the assignee] ... may enforce the arbitration clause[ ]”); *Mason v. Midland Funding, LLC*, 2021 WL 3017993 at *17 (N.D. Ga. Jan. 18, 2021) (allowing an agent of a WebBank assignee to enforce an arbitration provision).

*Madorskaya v. Frontline Asset Strategies, LLC*, No. 19-cv-895, 2021 WL 3884177, (E.D.N.Y. Aug. 31, 2021), upon which Plaintiff heavily relies, is distinguishable because the plaintiff in that case did not sue the assignee, and instead, only sued the debt collector who handled the account for a few months. The court found noted that under South Dakota law, non-signatory agents can enforce arbitration provisions in two circumstances:

> (1) when all the claims against the nonsignatory defendants are based on alleged substantially interdependent and concerted misconduct by both the nonsignatories and one or more of the signatories to the contract; or (2) where it would be manifestly unfair to allow plaintiffs to assert claims arising out of agreements against nonsignatories to those agreements without allowing those defendants also to invoke the arbitration clause contained in the agreements.

*Id.* at *9 (quotation marks and citations omitted). In this case, Plaintiff has sued both LVNV, the assignee, and Resurgent, the alleged debt collector, arising out of alleged interdependent and concerted misconduct. Indeed, Count I of the Complaint, alleging violations of the FDCPA, makes no distinction between them. Additionally, it would be manifestly unfair to refuse to allow Defendants to invoke the arbitration provision.

Therefore, the Court should compel Plaintiff’s allegations against both Resurgent and LVNV to arbitration.

### D. Defendants Are Third-Party Beneficiaries of the Credit Card Agreement

Under South Dakota law, "[a] contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." SDCL 53-2-6. A third-

party beneficiary "must clearly show that [the contract] was entered into with the intent on the part of the parties thereto that such third party should be benefited thereby." *Sisney v. Reisch*, 2008 S.D. 72, ¶ 9 (South Dakota 2008). "The terms of the contract must clearly express intent to benefit that party or an identifiable class of which the party is a member. . . . This intent might in a given case, sufficiently appear from the contract itself." *Id.*

In this case, the Credit Card Agreement states that the arbitration provision survives beyond the termination of the relationship between Plaintiff and Citibank, including "any sale of your Account, or amounts owed on your Account, to another person or entity." It clearly expressed and intent to confer the right to enforce the arbitration agreement following the sale of the account to another person or entity. Such a sale occurred here; LVNV came to be the owner of the debt.

Numerous courts have held that third parties in similar circumstances can enforce arbitration provisions in similarly circumstances. *See, e.g. Gates* 2017 WL 680258 (D.N.J. Feb. 1, 2017); *Clarke v. Alltran Financial, LP*, 2018 WL 1036951, at *6 (E.D.N.Y. Feb. 22, 2018) ("[T]he Court finds the reasoning of other courts that have allowed third parties to compel arbitration under the . . . card agreement to be persuasive."); *Fedotov*, No. 03 Civ. 8823 (CSH), 2006 WL 692002, at *2 (S.D.N.Y. Mar. 16, 2006).

In short, this Court should compel Plaintiff's claims to arbitration because both LVNV and Resurgent are intended third-party beneficiaries of the arbitration Provision of the Credit Card Agreement.

**E. Plaintiff is Estopped from Avoiding Arbitration**

Assuming *arguendo* the Court does not find that Defendants can invoke the arbitration provision pursuant to its express terms or as third-party beneficiaries, Plaintiff should be

estopped from avoiding arbitration. *E.I. DuPont De Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, S.A.S., 269 F.3d 187 (3d Cir. 2001); *Bannett v. Hankin*, 331 F. Supp. 2d 354, 359 (E.D. Pa. 2004); *Grigson v. Creative Artist Agency, LLC*, 210 F.3d 524 (5th Cir. 2000); *McBro Planning and Dev. Co. v. Trianhle Elec. Const. Co., Inc.*, 741 F.2d 342 (11th Cir. 1984). The analysis set forth in that case law certainly applies here. In *E.I. DuPont*, the Third Circuit acknowledged with approval an estoppel theory whereby a signatory to an arbitration agreement was bound to arbitrate with a non-signatory "at the nonsignatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . ." 269 F.3d at 199-201. The Court observed that where "claims were intimately found in and intertwined with the underlying contractual obligations" application of the arbitration provision was appropriate. *Id.* In *Bannett*, the Eastern District of Pennsylvania applied the estoppel theory articulated in *E.I. DuPont* and compelled a signatory plaintiff to arbitrate claims against non-signatory defendants. 331 F. Supp. 2d at 359. In so doing, the Court noted that the plaintiff's claims against the non-signatory defendants touched upon the partnership agreement which contained the arbitration provision the non-signatory defendants sought to enforce. *Id.*

Plaintiff's attempt to argue that his claims are not intertwined with the agreement is belied by the allegations in the Complaint. Again, Plaintiff's Complaint is premised upon an alleged debt related to his personal credit card account ending in 4826. (See Dkt 1, Complaint ¶¶ 27-28.) He further admits to paying $1,322.96 on Resurgent's website to settle the debt accrued on this credit card. (*Id.* at ¶ 41 - 42.) Indeed, Plaintiff's claims are based upon Defendants' purported attempt to collect Plaintiff's debt based upon Plaintiff's default under the terms of the Credit Card Agreement and thus are clearly intertwined with the Credit Card Agreement. *See*

*Hautz Const., LLC v. H & M Dep't Store*, 2012 WL 5880370, at * 14 (D.N.J. Nov. 20, 2012) (holding that a signatory is estopped from resisting arbitration "when the issues the nonsignatory is seeking to resolve in the arbitration are intertwined with the agreement that the estopped party has signed.") (citing *Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Intern, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999)). Plaintiff should therefore be estopped from avoiding arbitration pursuant to the terms of the Credit Card Agreement.

## II.     The Sexton Declaration and Exhibits Should be Considered

Putting aside the fact that Plaintiff has the burden of proving the invalidity of the Credit Card Agreement, Plaintiff's claim that the Court should ignore any new "documents" that Defendants submit with their reply has no basis. Plaintiff cites to *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299 (2d Cir. 2020) for this proposition. However, this is a clear misstatement of the holding in *Pettaway*. In *Pettaway*, the Court found that an argument that was raised on appeal for the first time in appellant's reply brief was found to be waived. This matter is currently before the trial court and is not on appeal. Therefore, it is easily distinguished. Indeed, *Conn. Bar Ass'n v. United States*, 620 F.3d 81 (2d Cir. 2010) and *Norton v. Sam's Club*, 145 F.3d 114 (2d Cir. 1998), both cited by Plaintiff, similarly relate to arguments raised for the first time in a reply on appeal. In *Norton*, the Court specifically said "[i]ssues not sufficiently argued in the briefs are considered waived and normally will not be addressed **on appeal."** 145 F.3d at 117. (emphasis added). Therefore, there is no justification for Plaintiff's requesting the Court not consider the Sexton Declaration, which merely authenticates the Credit Card Agreement already provided with the moving papers.

**CONCLUSION**

Based upon the foregoing, Defendants respectfully request that arbitration be compelled and the Complaint to be dismissed.

Dated: June 8, 2022

**GORDON REES SCULLY MANSUKHANI, LLP**
*Attorneys for Defendants LVNV Funding, LLC and Resurgent Capital Services LP*

By: /s/ *Peter G. Siachos*
Peter G. Siachos, Esq.
1 Battery Park Plaza, 28th Floor
New York, NY 10004
Telephone: (973) 549-2500
Facsimile: (973) 377-1911
E-mail: psiachos@grsm.com